UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
TROY GREENE,                                            :
                                                        :
                        Plaintiff,    :        15-cv-249 (ARR)(RER)
    -against-                                          :
                                                    :        Not for electronic or print
ROCHDALE VILLAGE SPECIAL PATROLMAN    :        publication
KENDALL BRYAN,                                          :
                                                        :        Opinion and Order
                          Defendant.    :
------------------------------------------------------------------- X

ROSS, United States District Judge:

On January 4, 2019, Troy Greene ("plaintiff") submitted a motion *in limine* seeking the following relief from this court: (1) a preclusion order barring Kendall Bryan ("defendant") from introducing video footage at trial; (2) an adverse inference jury instruction based upon the destruction of relevant video evidence; and (3) admission into evidence of an exhibit that recounts a statement the defendant alleges was made to him by plaintiff. Defendant opposed plaintiff's motion on January 10, 2019. For the following reasons, plaintiff's motion is granted in part.

## BACKGROUND

I assume familiarity with the underlying facts of this litigation, which are set forth in detail in my order denying the parties' motions for summary judgment. *See* Op. & Order, July 23, 2018, ECF No. 75.

On December 7, 2013, defendant, a special patrolman who had been deputized as a peace officer under New York City Administrative Code section 14-106(c), arrested plaintiff at Rochdale Village, a private housing complex located in Jamaica, Queens. *Id.* at 1–2. During the course of the incident, plaintiff suffered a tibial plateau fracture of his left leg. *Id.* at 4. He alleges that he fell down the stairs when defendant pushed him, causing him to tumble from the fifth-floor landing

1

before eventually coming to a stop between the second and first floors. *Id.* at 7. Plaintiff was subsequently charged with trespass, and on November 17, 2015, the case against him was dismissed on speedy trial grounds. *Id.* at 9. Plaintiff asserts claims of excessive force, false arrest, and malicious prosecution.

Jury selection and trial is set for February 4, 2019. On January 4, 2019, plaintiff moved *in limine* to (1) admit plaintiff's exhibit 14, (2) preclude defendant from introducing video footage and associated photographs, and (3) obtain an adverse inference jury instruction regarding the destruction of video evidence. *See* Pl.'s Mot., ECF No. 86.

1. **Plaintiff's Exhibit 14**

Pursuant to section 710.30(1)(a) of the New York Criminal Procedure Law, the state must provide a criminal defendant with "evidence of a statement made by a defendant to a public servant" whenever the state "intend[s] to offer [such statement] at a trial." Before the trespass charge against plaintiff was dismissed, the state provided him with a notice—currently labeled plaintiff's exhibit 14—in compliance with the rule.[1] The notice reports that the state intends to offer evidence of an oral statement that plaintiff made to defendant while both parties were at Jamaica Hospital on December 8, 2013 at 1:30.[2] Pl.'s Ex. 14. Specifically, plaintiff was alleged to have said, "in sum and substance," "I jumped the steps from the 5th floor to the 4th, 4th to 3rd[,] and

---

[1] Though defendant does not object to the introduction of plaintiff's exhibit 10 in the joint pretrial order, I note that exhibit 10, like exhibit 14, also recounts statements alleged to have been made by plaintiff as part of the state's obligations under section 710.30(1)(a).

[2] The notice does not indicate whether the time was in the early morning or the afternoon, but plaintiff asserts in his motion *in limine* that the statement was alleged to have been made at 1:30 a.m. *See* Pl.'s Mot. 14. Because the arrest occurred on the evening of December 7 and plaintiff was subsequently taken to Jamaica Hospital for medical treatment, plaintiff's timeline seems to make sense, assuming that the statement was made soon after plaintiff had arrived at the hospital.

then started rolling down because I was in so much pain. I'm mad I'm in so much pain for a summons. I was visiting someone. There was a brolic [sic] Spanish guy behind me." *Id.*

During his deposition, defendant admitted that he told the district attorney about statements he alleges plaintiff made to him after his injury. *See* Decl. of Richard J. Washington in Supp. of Pl.'s Mot. for Summ. J. ("Washington Decl."), Ex. 6, at 150, ECF No. 58-3 ("Bryan Dep."). Specifically, he testified that he reported to the D.A. that plaintiff told him that he "jumped from the steps from the fifth floor to the fourth floor, fourth to the third, and then started rolling down because he was in so much pain." *Id.* at 153. He further testified that plaintiff made that statement while both parties were in the hospital. *Id.*; *see also* Pl.'s Mot. 16–17 (arguing that defendant admitted to providing a portion of the statement to prosecutors). Plaintiff did not ask defendant about the other statements contained in plaintiff's exhibit 14.

### 2. Video Footage from Rochdale Village

During discovery, defendant produced a video segment that captured footage from the night of plaintiff's arrest and injury. Pl.'s Mot. 1. Plaintiff asserts that the building where the incident occurred, Building 9, had at least three other cameras that would have recorded relevant footage during the incident, though this footage has not been provided to plaintiff. *Id.* He alleges that Rochdale Village maintained cameras outside of the building, in its lobby, and inside the elevator used by defendant to arrive at the fifth floor just prior to plaintiff's arrest and injury. *Id.* Plaintiff attempted to obtain this footage on multiple occasions, but he was unsuccessful. *Id.* 1–2.

From 2012 until the end of 2017, Marlon Small[3] served as a DVR Investigator at Rochdale Village. Washington Decl., Ex. 9, at 6–9, ECF No. 58-6 ("Small Dep."). In that role, he was

---

[3] Though both parties often refer to Mr. Small as Mr. Smalls, *see, e.g.*, Joint Pretrial Order, ECF No. 78, he signed and wrote his own name as "Marlon Small" on his declaration attached to the

responsible for locating and copying relevant video footage from the facility's cameras. *Id.* at 8. He regularly pulled video footage "whenever an incident happened on the complex," including an injury. *Id.* Each camera maintained by the complex records and saves video footage for up to thirty days; if video footage is not pulled from the cameras within thirty days of its initial recording, the footage is erased and new footage is recorded over it. *Id.* at 12–14, 27–28. Mr. Small testified that the lobby of Building 9 has a camera, but he is not able to recall whether the camera was working on December 7, 2013. *Id.* at 17. He also testified that the elevator in Building 9 has a camera, though he could not recall whether it was operable at the time. *Id.* at 17–18. In an affidavit dated January 10, 2019, he later clarified that the camera located in the elevator "w[as] pointed toward the interior of the elevator . . . and would not capture the hallways on the floors." Def.'s Reply Ex. A, Small Aff. ¶ 12, ECF No. 88 ("Small Aff."). Finally, he testified that he was not asked to pull footage from the outside of Building 9, though he did not explicitly affirm that the complex includes a camera in that location. Small Dep. at 17. However, defendant does not dispute the fact that there is a camera positioned outside Building 9, and he has neither argued nor provided any evidence to suggest that the cameras located in the lobby, outside Building 9, or in the elevator were not in operation at the time of plaintiff's injury and arrest. *See* Def.s' Reply, ECF No. 88.

Within thirty days of December 7, 2013, Mr. Small was asked to retrieve video footage recorded on that date. Small Dep. 14–15. Though he cannot recall who made the request, he believes that the instruction came because the complex had completed an "aided injury" report indicating that someone had been injured on the complex's property. *Id.* He was instructed to "capture the footage of one specific area" in connection with the injury, *id.* at 16, though he also

---

defendant's reply to plaintiff's motion *in limine*. *See* Def.'s Reply Ex. A, Small Aff., ECF No. 88-1 ("Small Aff."). Therefore, I refer to him as Marlon Small, or Mr. Small, throughout this order.

testified that he frequently searched for footage on his own based on instructions from the requesting officer, *see id.* at 25–26. The record is ambiguous, based on Mr. Small's testimony and subsequent affidavit, regarding the exact process used to pull the video footage recorded on December 7, 2013. While the defendant argues that Mr. Small's testimony reveals that he "pulled all of the video that *he* believed to be relevant to the 'aided's injury,'" Defs.' Reply 12 (emphasis added), Mr. Small testified during his deposition that he was told "[t]o capture the footage of the specific area" relevant to the aided injury report, and that he followed instructions accordingly. Small Dep. 16–17. However, in an affidavit attached to defendant's reply to plaintiff's motion, Mr. Small stated that he "retrieved the video footage that [he] believed to be related to the incident," Small Aff. ¶ 6; *see also id.* ¶ 8, suggesting that he exercised some authority in the selection of footage. He does not know whether defendant was the person who asked that he retrieve video from December 7, 2013, but, as a special patrolman, defendant would have had the authority to direct him to do so. Small Dep. 18.

At trial, defendant intends to offer the video footage recorded by Mr. Small and subsequently provided to plaintiff during discovery. The disc provided by defendant displays the following key events: (1) several officers enter the front door of Building 9; (2) three individuals run out of the stairwell and enter a service hallway; and (3) plaintiff appears slumped on the staircase, and is subsequently surrounded by officers and later lifted onto a stretcher after emergency medical technicians arrive in the building. Plaintiff maintains that this footage is incomplete, as it does not include footage from the outside of Building 9, the lobby, or the elevator. Pl.'s Mot. 1–2.

## I. Motion for Sanctions

Plaintiff's request for a preclusion order and an adverse inference jury instruction can be properly understood as a motion for sanctions related to defendant's alleged spoliation of relevant video evidence. "[A] court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs" or under Federal Rule of Civil Procedure 37, which governs the discovery process. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002). Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). When crafting a sanction for a party's spoliation, "a district court has broad discretion" and may impose a variety of sanctions, including declaring a mistrial, delaying the start of a trial, or providing the jury with an adverse inference instruction. *Id.*

As plaintiff acknowledges, *see* Pl.'s Mot. 9–11, Federal Rule of Civil Procedure 37(e), which provides for sanctions in the event that "electronically stored information" is destroyed, is the rule that best applies to his motion.[4] *See, e.g.*, *Ungar v. City of New York*, No. 15-CV-6091, 2018 WL 5777123, at *2 (E.D.N.Y. Nov. 2, 2018) (applying Rule 37(e) to a motion for sanctions involving electronically stored video surveillance footage). Under Rule 37(e), a court may issue sanctions if "electronically stored information that should have been preserved in the anticipation

---

[4] Plaintiff's lawsuit was filed on January 16, 2015, *see* Compl., ECF No. 1, about a year before Rule 37(e) took effect on December 1, 2015. However, in his order accompanying the amendments to the federal rules, Chief Justice John G. Roberts ordered that the amendments, including those to Rule 37, shall apply to "all proceedings then pending" at the time that the new rule goes into effect, "insofar as just and practicable." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 496 (citing 2015 U.S. Order 0017). Plaintiff does not present any argument for why the application of Rule 37(e) would be unjust or impracticable and, indeed, he admits that the court may properly seek to apply that rule to his motion. Furthermore, though defendant does not address which version of the rule should apply to this motion, courts have held that the application of the rule to the party against whom sanctions are sought is not inequitable because the amendment is more lenient than the original rule. *See id.* at 496.

or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." The Rule provides for two categories of sanctions. First, after a party proves the threshold requirements of the rule, sanctions that are "no greater than necessary" may be ordered if the party seeking sanctions suffered prejudice due to the loss of the information. Fed. R. Civ. P. 37(e)(1). Alternatively, if the party seeking sanctions proves that the opposing party "acted with the intent to deprive another party of the information's use in the litigation," the court may impose more severe sanctions, including "instruct[ing] the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2)(B). The requirement of intent, which is unique to Rule 37(e), distinguishes the destruction of electronically-stored information from alternative forms of evidence; for all other types of evidence, a movant can obtain a severe sanction, including an adverse inference instruction, upon a showing that a party engaged in only "negligent spoliation." *Ungar*, 2018 WL 5777123, at *3 (citing *Residential Funding Corp.*, 306 F.3d at 108).

Defendant first argues that plaintiff's motion for sanctions should be barred because it is untimely. *See* Def.'s Reply 6–7. "Rule 37 does not establish any time limits within which a motion for sanctions must be filed, [but] unreasonable delay may render such motions untimely." *Ferrari Club of Am., Inc. v. Bourdage*, No. 6:12-CV-06530 EAW, 2017 WL 6419053, at *2 (W.D.N.Y. Apr. 20, 2017) (quoting *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y. 1999)). Plaintiff initially expressed an intention to move for sanctions when he filed his pretrial memorandum on September 6, 2018. *See* Pretrial Memorandum, ECF No. 79. Thus, though I only recently asked that he brief his motion, his request actually came several months ago. Additionally, plaintiff's motion involves a relatively narrow set of facts, and the parties do not dispute many of the relevant facts—including that there may have been other video footage taken of the incident

7

on December 7, 2013 and that any other footage has since been destroyed. *Cf. Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009) (noting that the timeliness of a spoliation motion is particularly important when it will require the court to engage in an evidentiary hearing or reopen discovery to identify relevant facts).

However, even assuming that plaintiff's motion is timely, he fails to demonstrate that he is entitled to sanctions.

**A. Though defendant may have been in control of the relevant video footage, he did not have a duty to preserve it at the time that it was destroyed.**

The party seeking spoliation sanctions has the burden of establishing that he meets the elements under Rule 37. *See Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706 (S.D.N.Y. 2017), *objections overruled*, No. 14 Civ. 2385 (LGS), 2017 WL 3172715 (S.D.N.Y. July 25, 2017). Plaintiff's motion fails to demonstrate the threshold requirements for the issuance of sanctions under Rule 37(e): that the evidence should have been preserved and that it was lost "because [the] party failed to take reasonable steps to preserve it." Though this language differs slightly from the language applicable to non-electronic evidence, a party seeking sanctions under either rule must demonstrate that there was an obligation to preserve the evidence, which can be met by demonstrating that the party "was on notice that litigation was likely and that the information would be relevant." *Leidig v. Buzzfeed, Inc.*, No. 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at *8 (S.D.N.Y. Dec. 19, 2017) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment); *see also id.* (noting that the duty to preserve standard under Rule 37(e) "is the same standard applicable to the traditional spoliation test").[5] "Th[e] obligation to preserve evidence

---

[5] Plaintiff does not argue that the standard differs between the two rules or that Rule 37(e) imposes a greater obligation on a defendant to preserve evidence. If he did, such an argument would be unavailing. *See, e.g.*, *Distefano v. Law Offices of Barbara H. Katsos, PC*, No. CV 11-2893 (PKC) (AKT), 2017 WL 1968278, at *3 (E.D.N.Y. May 11, 2017) ("Rule 37(e) does not purport to create

arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).

The party seeking sanctions must show that the opposing party had control over the evidence. *See Residential Funding Corp.*, 306 F.3d at 107. A party need not maintain exclusive physical control over the relevant evidence in order to be deemed "in control." *See In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) ("[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." (quoting *Bank of N.Y. v. Meridien BIAO Bank Tanz. Ltd.*, 171 F.R.D. 135, 146–47 (S.D.N.Y. 1997), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02 Civ. 7377(LAK), 2007 WL 1518632 (S.D.N.Y. May 17, 2007)). Here, Mr. Small testified during his deposition that defendant would have had the power to ask him to retrieve video footage related to plaintiff's arrest and injury. Small Dep. at 18. This is likely sufficient to demonstrate that

---

a duty to preserve. The new rule takes the duty as it is established by case law, which uniformly holds that a duty to preserve information arises when litigation is reasonably anticipated." (quoting Comm. On Rules of Practice & Procedure, Report to the Judicial Conference, at App. B-15 (Sept. 2014), http://www.uscourts.gov/file/14523/download)). To be sure, the standard that applies to non-electronic evidence has been developed in the case law to require that the "defendants 'had an obligation to preserve [the evidence] at the time it was destroyed.'" *Tchatat*, 249 F. Supp. 3d at 707 (alteration in original) (quoting *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012)). This language more plainly indicates that the relevant inquiry revolves around the responsibilities and obligations of a particular party, as opposed to the more ambiguous language of Rule 37(e) itself, which asks about whether "electronically stored information . . . should have been preserved" without identifying a specific individual as the responsible party. However, given the clear instructions of the Standing Committee, I find that the obligations are identical, notwithstanding the slight differences in language.

defendant had the right, authority, and practical ability to obtain the relevant evidence and would have been in a position to preserve it—thus establishing control.

However, plaintiff fails to demonstrate that defendant *himself* was under a duty to preserve the relevant evidence, as opposed to Rochdale Village or other former defendants to the action.[6] He makes two primary arguments: (1) that defendant had a duty to preserve the evidence because he was aware that plaintiff would be prosecuted in a criminal case, and (2) that defendant was aware that there may be future civil litigation filed against him. Pl.'s Mot. 6–7. Both arguments fail to establish that defendant had an obligation to preserve the video footage.

First, though plaintiff argues that "[t]he complete video was relevant to the criminal case that began the moment Plaintiff was arrested," *id.* at 6, "there is no free-floating obligation to preserve evidence in a criminal prosecution." *Tchatat*, 249 F. Supp. 3d at 709. Though the prosecution must preserve and provide exculpatory evidence as part of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), that obligation applies only to "evidence that is actually favorable to the accused, not to 'preliminary, challenged, or speculative information,'" *Tchatat*, 249 F. Supp. 3d at 709–10 (quoting *United States v. Agurs*, 427 U.S. 97, 109 n.16 (1976)). Furthermore, the obligation applies only to evidence in the government's possession, *id.* at 710; here, the evidence was in the possession of a private housing complex, not the prosecuting officers. Therefore, plaintiff's arrest did not, on its own, impose a duty upon either Bryan or Rochdale Village to preserve any video footage that might have been relevant to plaintiff's criminal case.

Additionally, while plaintiff has presented evidence that suggests that some individuals at Rochdale Village might have been aware that plaintiff could later bring civil litigation against the

---

[6] Earlier in the litigation, Rochdale Village Inc. was named as a defendant to plaintiff's lawsuit, though the housing complex was later terminated as a defendant when plaintiff filed a second amended complaint on May 3, 2018. *See* Compl.; Am. Compl., ECF No. 68.

complex and its officers, he has not provided evidence to indicate that Bryan was himself aware of the possibility of future litigation. Plaintiff notes that plaintiff's mother called the complex several times while plaintiff was in the hospital, "threatening lawsuits and legal action" against the officers who had arrested him. Pl.'s Mot. 7 (citing Washington Decl. Ex. 20, ECF No. 60-3 ("Unusual Occurrence Report")). In a form addressed to Chief Thomas Mason, Sergeant Curtis Rogers recounted the events leading up to and during plaintiff's hospital stay. He wrote that "[Greene's] mother has continuously called threatening lawsuits and legal action and is unaware of the capabilities of a New York City Peace Officer." Unusual Occurrence Report. However, the form does not indicate the source of this information, and it contains no information to suggest that defendant himself was aware of plaintiff's mother's phone calls. Indeed, in his deposition, Bryan testified that he had no knowledge that any members of plaintiff's family attempted to visit plaintiff while he was in the hospital, and he said that he was "not sure" whether Sergeant Rogers "generate[d] a memo regarding Mr. Greene's family attempting to visit him." Bryan Dep. at 162. Plaintiff's evidence fails to establish that defendant was aware or should have been aware that he may later be named as a defendant in a civil case brought by plaintiff.

While it is true that "certain types of incidents tend to trigger litigation," *Taylor v. City of New York*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013), an obligation to preserve evidence arises only where the party with knowledge of the potential for future litigation was the party that failed to preserve the evidence. For example, in *Field Day, LLC v. County of Suffolk,* the court declined to impose spoliation sanctions upon the individual defendants, finding that, while there was sufficient evidence in the record to show that the county had notice of future litigation after the plaintiff filed a notice of claim form, there was no evidence that the individual defendants were themselves aware of the possibility of future litigation until plaintiff filed a lawsuit. No. 04-2202, 2010 WL 1286622,

11

at *5 (E.D.N.Y. Mar. 25, 2010); *see also Grant v. Salius*, No. 3:09cv21 (JBA), 2011 WL 5826041, at *2 (D. Conn. Nov. 18, 2011) (declining to impose sanctions upon individual defendants where there was no evidence that the individuals—as opposed to others connected to the events and litigation—"had any control over the recordings, any duty to maintain them, or were in any way involved in the failure to preserve them"); *Parlin v. Cumberland County*, No. 08-cv-186-P-S, 2009 WL 2998963, at *2 (D. Me. Sept. 16, 2009) (holding that, while the county, a former defendant to the action, was responsible for the destruction of evidence, "there is nothing in the record indicating that [the only remaining individual defendants] were involved in the destruction of the videotape," and thus sanctions were inappropriate). Likewise, where the evidence demonstrates that another party—and not the defendant against whom sanctions are sought—was responsible for record-maintenance, courts have declined to impose sanctions against a defendant who reasonably expected that the other party would assume the responsibility of preservation. *See Braham v. Lantz*, No. 3:08cv1564(DEW), 2014 WL 1270096, at *5 (D. Conn. Mar. 27, 2014).

The record before me fails to demonstrate that defendant either knew or should have known that litigation was likely, and thus, plaintiff has not met his burden of demonstrating that defendant had an obligation to preserve the evidence. While other former defendants to the action may have had a duty to preserve the video footage, their failure to do so is insufficient to impose spoliation sanctions upon defendant.[7]

**B. Certain video footage is inadmissible under Federal Rule of Evidence 403.**

---

[7] Even if plaintiff's evidence did establish that defendant was under a duty to preserve the evidence, he would not be entitled to the severe sanction of an adverse inference, as nothing in the record remotely demonstrates that the failure to preserve the relevant video footage was intentional as opposed to merely negligent. *See, e.g.*, *Ungar*, 2018 WL 5777123, at *4 (noting that the fact that the defendant "acted without the requisite intent . . . is fatal to Plaintiff's request for an adverse inference instruction" under Rule 37(e)).

Though I find that sanctions under Rule 37(e) are inappropriate, I am persuaded by plaintiff's argument that defendant should be precluded from introducing certain video footage under Federal Rule of Evidence 403. Rule 403 authorizes a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, . . . misleading the jury, . . . or needlessly presenting cumulative evidence." Defendant seeks to introduce several minutes of video footage and associated still images. Plaintiff argues that the portion of the video that "depicts several individuals (not the Plaintiff) fleeing from the stairwell" should be precluded under Rule 403 because it "has little probative value, and threatens to mislead the jury as to the events that preceded the video segment." Pl.'s Mot. 11. I agree.

It is undisputed that several individuals who were on the fifth floor of Rochdale Village fled the scene after the officers, including defendant, exited the elevator. *See, e.g.*, Pl.'s 56.1 Statement ¶ 35, ECF No. 57-2. In his deposition, plaintiff himself testified that everyone other than plaintiff and his friend Jonathan Skinner ran from the officers after the officers arrived on the fifth floor. *See* Washington Decl. Ex. 4, at 158, ECF No. 58-1. Skinner also testified that several men fled after the security officers arrived. *See* Washington Decl. Ex. 12, at 94, ECF No. 60-1. Thus, the portion of the video footage that depicts several men—not including plaintiff—running out of the stairwell and into a service hallway is minimally probative, as the information it displays is not in dispute and will be confirmed by several of the witnesses who will testify at trial.

In contrast, there is a serious danger that the footage would mislead the jury, as it could be misinterpreted as evidence that plaintiff also fled from the officers. Defendant maintains that plaintiff ran as soon as the officers arrived, and he argues that plaintiff's flight helped to establish either probable cause or arguable probable cause for his arrest. By depicting several individuals

running to escape the officers, the video could be misinterpreted by the jury as evidence that plaintiff was part of that same group before he suffered his injury.

After balancing the potential for misinterpretation against the minimally probative nature of the footage, I conclude that this portion of the footage should be precluded under Rule 403. The footage's very slight probative value is substantially outweighed by the danger that it will be misleading and unnecessarily cumulative, as it duplicates information that will be repeated by several witnesses and could mislead the jury into believing that it proves a fact that is heavily disputed.

## II. Plaintiff's Exhibit 14

Plaintiff's motion argues that he should be allowed to admit exhibit 14 at trial. As discussed above, the document recounts a statement allegedly made by plaintiff and later repeated by the defendant to Queens County prosecutors. Defendant argues that the statement is "a double hearsay statement and inadmissible as a matter of law." Def.s' Reply 17. I disagree, though I conclude that plaintiff is authorized to admit only a portion of the statement and that he must obtain a business-record certification if he wishes to introduce the document itself at trial.

Though defendant is correct that there are two layers of potential hearsay contained in this statement, *see id.*, both are resolved by exceptions to the hearsay rule. First, the document recounts a statement that *plaintiff* was alleged to have said. However, plaintiff denies having ever made the statement, and instead seeks to argue that the statement was "fabricated" by defendant "in an effort to conceal his actions in pushing the Plaintiff down the stairs." Pl.'s Mot. 15. Because the rule against hearsay applies only to statements offered by a party "to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(c)(2), the statement is not hearsay, as plaintiff seeks to introduce the statement to discredit the defendant rather than to prove the truth of its substance.

14

Second, the document recounts a statement that *defendant* was alleged to have said. This layer of hearsay is resolved by the party-opponent-statement exception, which allows a party to introduce an out-of-court statement against an opposing party where "the [opposing] party manifested that it adopted or believed [the statement] to be true." Fed. R. Evid. 801(d)(2)(B). In his deposition, defendant testified that he made a portion of the statement provided in exhibit 14 to the prosecutors, recounting a statement made to him by plaintiff. *See* Bryan Dep. at 153. After he was asked whether he communicated the first sentence, defendant acknowledged that he made this statement. *See id.* Thus, defendant "adopted" a portion of the statement as his own, and the statement is not hearsay within the meaning of Rule 801(d)(2)(B).

However, because defendant was not asked about the other sentences contained in exhibit 14, he neither adopted those statements nor admitted that they represent statements he made to the prosecutors. Those additional sentences are thus inadmissible, because defendant has not confirmed that he heard plaintiff make those statements or that he then repeated those statements to the prosecutors. *Cf. Abreu v. City of New York*, No. 04-CV-1721 (JBW), 2006 WL 401651, at *8–9 (E.D.N.Y. Feb. 22, 2006) (declining to admit a 710.30(1)(a) statement because the defendant testified "that he did not recall hearing the statement" and the statement's relevancy was dependant on a finding that defendant "did, in fact, attribute [the statement] to plaintiff").

As a result, plaintiff may introduce the first sentence of exhibit 14, as it was adopted by defendant during his deposition. If he wishes to introduce the remainder of exhibit 14, he must redact the other sentences and obtain a business-record certification pursuant to Rule 803(6)(D). Alternatively, plaintiff may use defendant's deposition testimony to introduce the statement contained in the first sentence of exhibit 14 without introducing the written document itself.

During the pretrial telephone conference scheduled for January 16, 2019, plaintiff's counsel should be prepared to provide the court with information about the manner in which he intends to introduce this statement at trial so that the court may craft an appropriate limiting jury instruction.

## CONCLUSION

For the foregoing reasons, plaintiff's motion *in limine* is granted in part. While plaintiff's request for spoliation sanctions is denied, defendant is precluded under Federal Rule of Evidence 403 from introducing the portion of video footage and associated photographs that depict individuals running out of a staircase and through a service hallway.[8] Additionally, plaintiff may admit the first sentence from exhibit 14, though he must obtain a business-record certification if he wishes to admit the redacted document itself.

SO ORDERED.

Date: January 14, 2019 \_\_\_\_\_/s/_____
Brooklyn, New York Allyne R. Ross

---

[8] The parties have not discussed any objections to the other two events captured in the video footage: (1) the arrival of the officers to Building 9; and (2) the arrival of emergency medical technicians and the subsequent removal of plaintiff from the stairwell on a stretcher. Because these events are not disputed, I assume that the defendant does not intend to offer this footage or the associated photographs into evidence.